lows. On count 1 of Indictment 216–78 defendant is sentenced to State Prison for 18 months. On count 2 of Indictment 216–78 defendant is sentenced to State Prison for 18 months, said sentence to run concurrent with the sentence imposed on count 1. The conviction and sentence on count 3 of Indictment 216–78 is vacated. Defendant is to receive credit for all time served.

We vacate the sentence imposed on Indictment 115–76 for violating the terms of his probationary sentence. Defendant is resentenced to the remaining portion of the original sentence, 232 days. The sentence is consecutive to the sentences imposed on Indictment 216–78. Defendant is to receive credit for all time served.

The matter is remanded for entry of modified judgments of conviction. We do not retain jurisdiction.

L. F., PLAINTIFF-APPELLANT, v. G. W. F.,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 8, 1982—Decided February 24, 1982.

196

Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.

*Robert A. Del Sordo* argued the cause for respondent.

*George E. Stransky* argued the cause for appellant.

The opinion of the court was delivered by

MORTON I. GREENBERG, J. A. D.

We deal on this appeal with a jurisdictional question under the Uniform Child Custody Jurisdiction Act, adopted in New Jersey in 1979. See *L.* 1979, *c.* 124; *N.J.S.A.* 2A:34–28 *et seq.* Disposition of this matter requires that its procedural history be set forth at some length.

The parties were married on January 31, 1969. Apparently they were then residents of New Jersey. Obviously they did not reside together for an extended period as they were divorced on November 4, 1971 on the ground that they had lived separate and apart in different habitations for a period of not less than 18 months and that there was no reasonable prospect of reconciliation. One child, L. V. F., was born of the marriage on September 19, 1969. Custody of the child was awarded to plaintiff wife. Defendant husband was granted the right to visit the child at plaintiff's home each Sunday between 3 and 6 p. m. Defendant was ordered to pay $20 support weekly for the child through the Camden County Probation Department.

Insofar as we can determine from the record, until 1976 there were no further proceedings between the parties in any court that are germane to this case. In 1976 plaintiff made application to the Chancery Division to be permitted to remove the child to the Township of East Berlin, Pennsylvania. Defendant at that time signed an instrument entitled "affidavit and consent to removal." The document recited that defendant had reviewed plaintiff's motion and supporting affidavit. It further set forth defendant's understanding that plaintiff was seeking the court's permission to remove the child from New Jersey to

the Township of East Berlin in Pennsylvania and that plaintiff wanted support payments sent to the new address. Defendant stated: "I have no objection to the application being made by the Plaintiff, and I consent to the removal of my daughter from the State." An order was then entered on October 12, 1976 in the Chancery Division permitting plaintiff to remove the child to East Berlin, Pennsylvania. The order provided that defendant would have visitation on a Saturday or Sunday from noon to 6 p. m. one day a month, in accordance with his work schedule.

In 1977 defendant moved to modify the visitation order. Notwithstanding the removal of the child to Pennsylvania, he filed the motion in the Superior Court of New Jersey, Chancery Division. Plaintiff filed an answering affidavit. She requested that the visitation be held at the home of her parents in Haddonfield, New Jersey. By order entered September 6, 1977 the court provided that defendant would have visitation one Saturday or Sunday each month in accordance with defendant's work schedule, between noon and 6 p. m. at the home of S. W., apparently considered a neutral person, in Medford Lakes, New Jersey, or at such other place upon which the parties could agree.

It is obvious that the order of September 6, 1977 was not sufficient to quiet the dispute between the parties. According to defendant's brief on this appeal, on January 17, 1978, he filed an application "to hold wife in contempt for her alleged failure to comply with the visitation order. A cross-application was made by wife." [1] The appendices do not include copies of the various moving papers. Nevertheless, there seems to be agreement that such motions were filed.

Defendant's application in New Jersey caused plaintiff to seek relief in Pennsylvania. According to an allegation in her brief on this appeal, she filed a petition on February 2, 1978 in the

---

[1] We observe that defendant's application, regardless of its form, was probably in reality seeking relief to litigant. *R.* 1:10–5.

Court of Common Pleas of Adams County, Pennsylvania, asking that Pennsylvania assume jurisdiction, that custody of the infant in plaintiff be confirmed, that defendant's visitation rights be established and that defendant be prohibited from removing the infant from Pennsylvania. The appendices on this appeal do not include a copy of the petition.

The matter was then heard on defendant's application in New Jersey. A conference held between the parties in chambers on February 24, 1978 resulted in an agreement being reached. Its thrust was that defendant would have visitation one day a month, either Saturday or Sunday, in Gettysburg, Pennsylvania. Further, the agreement took note of the pending Pennsylvania proceedings. While the parties did not expressly state that they would be dismissed, they did indicate that defendant need not appear in that state.

Following the proceedings of February 24, 1978 two orders were entered, one in Pennsylvania on April 5, 1978 and one in New Jersey on April 26, 1978. The Pennsylvania order recited that Pennsylvania had been plaintiff's and the infant's home state when the proceedings were commenced in that state. It further recited that New Jersey no longer had jurisdiction. Finally, it established a visitation schedule in conformity with the agreement reached in New Jersey. The New Jersey order established substantially the same visitation schedule. It also recited that the Pennsylvania court would act only if the New Jersey proceedings had been stayed. This seems not to have been accurate since Pennsylvania had already entered an order establishing visitation rights. Nonetheless, the parties apparently saw no need to clarify the jurisdictional confusion which then existed. This is understandable as there was no substantial difference between the visitation schedules established in the two states. Further, there seem to have been no further difficulties with respect to visitation at that time.

The next proceedings in the case were in 1981. Defendant filed a motion in New Jersey to modify the terms of the

visitation order. He set forth in his motion that he desired an order compelling plaintiff to allow weekend visitation in New Jersey, one weekend a month. He also desired visitation for one week in July and one in August. Further, he sought visitation for one-half of the Christmas vacation. Defendant annexed to his motion an affidavit dated February 3, 1981. He asserted that plaintiff wife "has continued to thwart my efforts to visit the child, many times rendering a trip to the Gettysburg, Pennsylvania area useless." He also stated that his wife had caused the child to be enrolled in school using the name of her new husband. He wanted her name corrected.

Plaintiff responded with a motion for a stay of the New Jersey proceedings and for an order directing the matter to be heard in Pennsylvania. There was annexed to the motion an affidavit of plaintiff's counsel reciting the history of the matter. He further asserted Pennsylvania was the more appropriate state to hear the case and that New Jersey was now an inconvenient forum. Also annexed to the motion was plaintiff's affidavit. She recited that since October 1976 she and her daughter had resided in Pennsylvania, that her daughter attended school there and that "all persons having knowledge of her care, protection, training, education, personal relations and all factors whatsoever dealing with her life, health and well-being are available in Pennsylvania and not in any other State." Plaintiff asserted that it would be inconvenient for her and her daughter, as well as the witnesses, to appear in New Jersey.

The motions were heard on March 6, 1981. The motion judge stated that he had jurisdiction since the divorce had been granted in this State and since defendant lives here. He indicated, however, that he probably would not have heard a custody application. Plaintiff's counsel then again requested a stay. But the judge reiterated that he had jurisdiction because the parties had been divorced here and one was still resident here. Ultimately he ruled that defendant was to be permitted visitation with the child on the fourth weekend of each month from Friday evening until Sunday evening, one week in July and one

in August and that the parties alternate custody over Easter and Christmas. A formal order embodying the decision was entered March 19, 1981. Plaintiff has appealed from that order and by this opinion we dispose of the appeal. The order of March 19, 1981 has been stayed pending the appeal.

Plaintiff asserts that this case is governed by the Uniform Child Custody Jurisdiction Act; that the case should have been heard in the most convenient forum which plaintiff contends is Pennsylvania; that the Chancery Division judge should have declined jurisdiction and that the order modifying visitation should not have been entered without a plenary hearing. Defendant contends that the Chancery Division was not required to decline jurisdiction on the basis either that the action was pending elsewhere or that New Jersey was an inconvenient forum, and that the matter was properly heard on the moving papers without a plenary hearing.

Initially we note that the parties are in agreement that the Uniform Child Custody Jurisdiction Act governs this case. We concur in this position. The act was adopted in Pennsylvania in 1977 (see 42 *Pa.Cons.Stat.Ann.* §§ 5341–5366; 9 *U.L.A., Child Custody Jurisdiction* 111 (1979)). As already noted it was adopted in New Jersey in 1979. The act establishes the jurisdiction of the Superior Court to make "a child custody determination by initial or modification decree." *N.J.S.A.* 2A:34–31. A custody determination includes a decision or order providing, among other things, for "visitation rights." *N.J.S.A.* 2A:34–30(b). Thus, inasmuch as this case involves modification of a visitation order, the act governs the court's jurisdiction.

The basis for jurisdiction is set forth in *N.J.S.A.* 2A:34–31 as follows:

a. The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or

(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

b. Except under paragraphs (3) and (4) of subsection a., physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

c. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

We shall deal with these bases in the order listed in the statute.

■ Our first inquiry is whether New Jersey was the home state of the infant when the proceeding was commenced or had been such within the six-month period before it was started. Resolution of that question requires a determination of when the proceeding was commenced. Arguably it was started in 1971. We say that because the initial judgment awarded plaintiff custody subject to defendant's visitation rights. Subsequent proceedings in this State or Pennsylvania were concerned with modification or enforcement of those rights. Indeed, we observe that all proceedings in New Jersey have been captioned in the original action with the initial docket number.

Yet our common sense is offended by the concept that simply because a case is originally started in this State, all subsequent proceedings between the parties involving the original subject matter should be regarded as commenced here. If we read *N.J.S.A.* 2A:34–31(a)(1) in such a way, an absurd consequence could result. It would have been entirely possible that both plaintiff and defendant following the divorce could have moved

to another state (even the same state) with plaintiff retaining custody. Surely it would not have been the intention of the Legislature that in such a situation the Superior Court of this State exercise jurisdiction to make custody determinations in a dispute involving nonresidents free to litigate elsewhere. Rather, we think that the home state of the child should be determined at the time of filing of the immediate application being considered by the court. We recognize, of course, that in custody and visitation disputes the controversy could be ongoing and thus it might be difficult to determine when the immediate application was filed. We say this because motions and proceedings could be related. Thus, an application could be met with a cross-application giving rise to a difficult jurisdictional question if the infant were moved between the filing of the applications. But here there is no such problem. An order was entered on April 26, 1978 in New Jersey. The next proceeding in the case was defendant's motion filed in 1981. We hold that in view of the long interval between the proceedings, the home state of the infant was to be determined as of the time of the filing of the 1981 application. Inasmuch as that state had been Pennsylvania since 1976 the Chancery Division did not have jurisdiction under *N.J.S.A.* 2A:34–31(a)(1).

The result we reach finds support in *Howard v. Gish*, 36 *Md.App.* 446, 373 *A.*2d 1280 (Ct.Spec.App.1977). There a husband and wife were divorced in Georgia under a decree awarding the wife custody of an infant born of the marriage. The wife who had remarried was subsequently killed in an accident. The stepfather then brought the child to Maryland where he filed a petition for her custody. This petition was opposed by her natural father and her grandmother. They alleged that because the Georgia courts had originally made an order concerning her custody, Georgia had continuing jurisdiction in the action. The appeals court rejected this contention. It held that under the Uniform Child Custody Jurisdiction Act, Maryland should be regarded as the "home state." *Howard v. Gish* is useful to us. It is manifest that the Maryland court considered

that a child could have only one home state, just as a person may only be domiciled at one place. *See Citizens Bank & Trust Co. v. Glaser,* 70 *N.J.* 72, 81 (1976). The court determined which state was the home by reference to where the child was living at the time of commencement of the immediate proceeding in court when the Maryland petition was filed. It did not look to the remote time of when custody had originally been awarded.

Also helpful is *Marriage of Settle,* 276 *Or.* 759, 556 *P.*2d 962 (Sup.Ct.1976). There a wife had started a custody action in Indiana. Subsequently the children were brought to Oregon where there were further custody proceedings. Oregon's jurisdiction was challenged. The Oregon Supreme Court implicitly held that a child could have only one home state. The court held that Oregon was the home state, clearly considering the time of the commencement of the Oregon proceedings rather than the prior Indiana case as the time to establish the children's home state.

■ The second basis for jurisdiction is whether it is in the best interest of the child that the Superior Court assume jurisdiction because the child and one or both of her parents have a significant connection with this State and there is available here substantial evidence concerning the child's present or future care, protection, training and personal relationships. It is clear, of course, that defendant is a resident of New Jersey and thus has a substantial connection with this State. What we do not find is any substantial connection between the infant and this State. The child was removed to Pennsylvania in 1976 when she was about seven years old. These proceedings were commenced about five years later, in 1981. Though the child may have visited in New Jersey between these dates, there is no indication that she had a significant connection with this State. We note that plaintiff in her affidavit in support of her motion for a stay asserted that the infant had attended school in Pennsylvania since 1976. We think that a child of tender years would rather quickly establish her ties at her new residence. Further, we

note that the move to Pennsylvania was made with defendant's consent. Thus her connections were properly established there. *Compare Stevens v. Stevens,* 177 *N.J.Super.* 167 (App.Div.1981).

Cases from other states determining whether jurisdiction may be found under *N.J.S.A.* 2A:34–31(a)(2) do not establish a clear test governing here. *See Marriage of Settle, supra; Larsen v. Larsen,* 5 *Kan.App.*2d 284, 615 *P.*2d 806 (1980); *Matteson v. Matteson,* 379 *So.*2d 677 (Fla.App.1980); *Smith v. Superior Court,* 68 *Cal.App.*3d 457, 460–461, 137 *Cal.Rptr.* 348 (D.Ct.App. 1977), and *Brooks v. Brooks,* 20 *Or.App.* 43, 530 *P.*2d 547 (1975). We think that each case must be decided on its own facts. Certainly the consideration that defendant is a resident of New Jersey does not establish in itself that the infant has a substantial connection with this State. If it did then the requirement that a parent *and* the child have a substantial connection with New Jersey would be largely superfluous. Obviously, there would always be a substantial connection between a parent and child, even if only biological or legal, and we doubt that except perhaps emergency situations there would ever be a proceeding regarding custody in a state where neither parent had a significant connection. We perceive of no other substantial connections between the infant and this State. Clearly her roots have been established in Pennsylvania.

In adopting our conservative jurisdictional approach we take note of the comment to the Uniform Child Custody Act:

[p]aragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the State. The submission of the parties to a forum, perhaps for the purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction. [9 *U.L.A., supra* at 124]

The remaining bases for jurisdiction under *N.J.S.A.* 2A:34–31(a)(3) and (4) clearly are inapplicable. Subsection 3 requires that the child be physically present in New Jersey and that she have been abandoned or require emergency protection because of mistreatment, abuse or neglect. These conditions have not been met. Subsection 4 requires a showing that Pennsylvania declined jurisdiction. There is no indication that that has happened. Rather the contrary is true. In 1978 that state assumed jurisdiction.

We are not by our opinion to be understood as in any way passing upon the substantive aspect of the motion judge's order. We do not reach the point. Our disposition makes it unnecessary to consider whether the trial court should have declined to exercise jurisdiction under *N.J.S.A.* 2A:34–35.

The order of March 19, 1981 is vacated.