OPINION OF THE COURT
WlLMER J. PATLOW, J.
This is an application by defendant husband to modify a judgment of divorce in order to grant him custody of his two daughters: Christine, age 13, and Theresa, age 11.
The divorce decree, dated February 19, 1974, awarded custody of the children to plaintiff wife based upon a December 5, 1973 separation agreement which was incorporated into the decree.
On March 26,1974, shortly after the decree was entered, the parties entered into an addendum to the separation agreement whereby custody was changed to defendant husband and his obligation for child support payments accordingly deleted. However, the judgment of divorce was never modified to reflect these changes.
Custody of both children continued in the husband without interruption from March, 1974 until the summer of 1980. During the first half of this period plaintiff wife exercised regular visitation here in Rochester, New York, but in January, 1977 she moved to the State of Texas. Following her relocation, she kept in contact with the children by telephone and had extended periods of visitation with them in Texas, primarily during the children’s summer vacations.
In the summer of 1980 plaintiff and defendant reached an agreement, the exact terms of which are now in dispute, concerning a change in custody for the younger daughter Theresa. Defendant contends that he agreed to a temporary change in physical residence for the 1980-1981 school year, with the daughter to return to Rochester at the close of the school year in May or June, 1981. Plaintiff asserts it was agreed that Theresa was to remain in Texas permanently following the summer, 1980 visitation.
In August, 1980, at the close of summer visitation, the elder daughter Christine was returned to the custody of the *817 father in Rochester, New York, while Theresa remained with the mother in Texas. Except for Thanksgiving vacation, Theresa continued to reside with her mother throughout the 1980-1981 academic year.
Sometime during April or May, 1981, plaintiff caused defendant to be personally served in New York with a petition which commenced a Texas proceeding for custody of both children.
Upon the return date, May 19, 1981, defendant completely defaulted in the Texas proceeding.
On June 2, 1981 the Texas matter was reached for a hearing and on June 10, 1981 the Texas court made an order appointing plaintiff wife “Managing Conservator” (essentially custodial parent) and defendant husband “Possessory Conservator” of both children. The court also directed that defendant pay child support for Theresa.
The June 10, 1981 decision expressly accorded full faith and credit to the February 9, 1974 divorce decree but makes no mention of the March 26, 1974 addendum to the separation agreement. Inasmuch as the petition requested that such full faith and credit be granted the divorce decree and likewise made no mention of the addendum to the separation agreement, defendant husband contends that the addendum was never brought to the attention of the Texas court.
On June 3, 1981, the day after the hearing, plaintiff permitted Theresa to fly to Rochester, New York, with a prepaid return airline ticket which scheduled her to leave •for Texas six weeks later.
Prior to his knowledge of the June 10,1981 Texas order, defendant obtained the instant order to show cause dated June 26, 1981 and returnable at Special Term on July 24, 1981. The order to show cause provided that the physical residence of both children was to remain temporarily with defendant and that plaintiff was restrained from removing the children from Monroe County, New York, and from interfering with or impeding the determination of defendant’s application.
On July 13, 1981 defendant caused the instant order to show cause to be personally served upon plaintiff in Texas. *818 It was subsequent to this service that defendant received by mail a copy of the June 10, 1981 order.
Finally, defendant alleges that on July 20,1981 plaintiff and another individual abducted Theresa from a street corner in Rochester and drove her to Pennsylvania and ultimately back to Texas, despite efforts of the police to apprehend them.
At the present time, one child, Christine, is with the defendant in Rochester, and Theresa is with the plaintiff in Texas.
The issue now before this court is whether or not it has jurisdiction to entertain defendant’s application, given the prior Texas decree.
The court must consider both the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, § 75-a et seq. [UCCJA]) and the recently enacted Federal Parental Kidnaping Prevention Act of 1980 (US Code, tit 28, § 1738A [PKPA]) which is said to pre-empt inconsistent State law by virtue of the supremacy clause of the United States Constitution. As was stated in a similar case: “In this case, as in all interstate custody and visitation disputes, the threshold question is which State properly may assume jurisdiction. Before applying the UCCJA, reference to the Parental Kidnaping Prevention Act of 1980 * * * must be made since the PKPA not only establishes a policy of Federal pre-emption in this area but also by virtue of the supremacy clause of the United States Constitution, it must be accorded priority. (Leslie L. F. v Constance F., 110 Misc 2d 86.)” (Matter of Diane W. v Norman W., 112 Misc 2d 114, 115.)
The PKPA provides in relevant part:
“§ 1738A. Full faith and credit given to child custody determinations.
“(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
“(b) As used in this section, the term * * *
*819 “(4) ‘home State’ means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months * * *
“(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
“(1) such court has jurisdiction under the law of such State; and
“(2) one of the following conditions is met:
“(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or * * *
“(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
“(d) The jurisdiction of a court of a State which had made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant * * *
“(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
“(1) it has jurisdiction to make such a child custody determination; and
“(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.”
The PKPA requires that any assumption of jurisdiction by a State be “consistent” with its provisions, as that concept is defined in title 28 (§ 1738A, subd [c]) of the United States Code.
The court concludes that assuming jurisdiction in this matter would indeed be consistent with the provisions of the PKPA as to both infants inasmuch as New York has jurisdiction over both pursuant to its own statute (the UCCJA), and is the home State of the infant Christine and has continuing jurisdiction over Theresa. Thus, the requirements of subdivision (c) (pars [1], [2], subd [A] for Christine, pars [1], [2], subd [E] for Theresa) are met.
*820 In reaching the determination that New York has jurisdiction under its own law, the court has found the following provisions of the UCCJA relevant.
Subdivision 1 of section 75-d of the Domestic Relations Law provides:
“1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
“(a) this state (i) is the home state of the child at the time of the commencement of the custody proceeding, or * * *
“(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships”.
Subdivision 5 of section 75-c of the Domestic Relations Law defines “home state” as follows: “5. ‘Home state’ means the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months”.
There can be no doubt that at the time the instant proceeding was commenced by personal service of the order to show cause upon plaintiff wife on July 13, 1981, New York was the home State of the infant Christine, who had lived continuously in New York State from the time of the divorce in 1974, including the six consecutive months immediately preceding the commencement of this application. Thus, New York State has jurisdiction over Christine Walsh pursuant to section 75-d (subd 1, par [a], cl [i]) of the Domestic Relations Law.
As to the infant Theresa, although New York undeniably was her home State from the time of the divorce in 1974 until the summer of 1980, it cannot be said that it. remained so at the time of the commencement of the proceeding in July, 1981. Although she had been present in New York for approximately a month at that time, the *821 court concludes that her home State had changed from New York to Texas when she took up residence with her mother for purposes of the 1980-1981 school year and continued to live there for a period in excess of six consecutive months.
Nevertheless, the court considers it to be in the best interests of this child for New York to assume jurisdiction pursuant to section 75-d (subd 1, par [b]) of the Domestic Relations Law because it finds that the child and at least one parent, the father, have a significant connection with this State and there is substantial evidence here concerning the child’s future care, protection, training and personal relationships.
Specifically, the court finds that Theresa has a significant connection to New York State in that she did in fact reside here from 1974, and presumably, from birth, until the summer of 1980, so that she has lived here for most of her life, and longer than in any other jurisdiction. Her father, sister, stepmother, stepbrother and other relatives, with whom she appears to have normal relationships, continue to reside in this State.
Additionally, the original separation agreement and the addendum thereto which determined Theresa’s custody were executed in New York State and provided that they were to be governed by and construed under the laws of New York State. Likewise, the 1974 divorce decree which incorporated the separation agreement and granted custody of Theresa to her mother, and which was accorded full faith and credit in the State of Texas, was rendered in New York State.
Finally, there is substantial evidence in this State concerning Theresa’s future care in that it is here that defendant proposes she return. Any evaluation of the reconstituted family created by the defendant’s remarriage in 1974, with which Theresa lived while in Rochester and which defendant would have her rejoin, would necessarily be undertaken here in Rochester, New York. Theresa’s medical and school records from the period of her residence here, and a recent psychological evaluation, are in New York.
*822 Having thus concluded that New York has jurisdiction over both children pursuant to the UCCJA, the court determines that title 28 (§ 1738A, subd [c], par [1]) of the United States Code is met. However, as stated above, the PKPA (US Code, tit 28, § 1738A, subd [c]) requires an additional showing once jurisdiction under State law has been established.
For the infant Christine, this additional requirement is met by virtue of the fact that New York was her home State at the time of the commencement of this action not only under the UCCJA, but also under the PKPA, as a result of her six-month consecutive residency in this State immediately prior to July 13, 1981.
For the infant Theresa, the additional showing necessary to make jurisdiction consistent with the PKPA is a finding of continuing jurisdiction as defined in title 28 (§ 1738A, subd [c]) of the United States Code.
This finding of continuing jurisdiction is predicated on the fact that at the time of the original divorce decree, New York unquestionably had jurisdiction due to the length of the parties’ residence in this State, and New York was the “home State” of the children by any definition. Thus, the original decree was made consistently with the provisions of the PKPA.
Furthermore, New York did not lose State law jurisdiction under the UCCJA (Domestic Relations Law, § 75-d, subd 1, pars [a], [b]), as shown above, despite the removal of Theresa to Texas. Additionally, one contestant, the father continues to reside here. Therefore, both requirements of subdivision (d) of section 1738A are met.
The court notes that New York retains continuing jurisdiction under the Federal statute even if Texas could have properly asserted jurisdiction under its own State law at the time the Texas proceeding was commenced in April or May of 1981. One of the basic principles of the PKPA is that it “confers exclusive and continuing jurisdiction on the home State” once it has been established (William R. B. v Cynthia B., 108 Misc 2d 920, 923, emphasis added; and see discussion in Foster and Freed, Law and the Family, Child-Custody Decrees-Jurisdiction, NYLJ, April 24, 1981, p 1, col 1).
*823 Indeed, it appears that under section 11.045 of the Texas Family Code, that State clearly had jurisdiction over the infant. Theresa, but only arguably over the infant Christine, when the Texas proceeding was commenced.
Section 11.045 of the Texas Family Code provides as follows:
“(a) A court has original jurisdiction of a suit affecting the parent-child relationship, whether or not the child is physically present in the state, only if one of the following conditions is met:
“(1) this state:
“(A) is the principal residence of the child at the time the proceeding is commenced; or * * *
“(2) it is in the best interest of the child that a court of this state assume jurisdiction because:
“(A) the child and the child’s parents or the child and at least one contestant have a significant connection with this state and there is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships”.
In the spring of 1981, when the Texas proceeding was commenced, the parties’ daughter Theresa had lived in Texas with her mother for nearly a year so that Texas had become her “principal residence” within the meaning of section 11.045 (subd [a], par [1], cl [A]) of the Texas Family Code, thus conferring jurisdiction.
The same, however, cannot be said of Christine, who had never changed principal place of residence to Texas. Jurisdiction could arguably have been had in the child’s best interests under section 11.045 (subd [a], par [2], cl [A]) of the Texas Family Code except that it is doubtful whether she had a significant connection with the State, having spent only three summer visitation periods there, and whether there was substantial evidence in the State concerning her future care, inasmuch as the plaintiff, who sought no support for this daughter, apparently intended her to remain in Rochester with her father.
More significantly, even assuming Texas had jurisdiction under its Family Code, the Texas court can be said to have acted consistently with the PKPA only so long as it *824 itself enforced, according to its terms, the prior New York custody determination which was rendered consistently with the Federal statute. Any modification by the Texas court would have to have been predicated upon a showing that New York either no longer had jurisdiction or had declined to exercise it (US Code, tit 28, § 1738A, subd [f]). There is no showing here that New York State had lost jurisdiction or had declined to exercise it prior to plaintiff’s application to the Texas courts.
Thus, the Texas custody decree is consistent with PKPA, and entitled to enforcement, only insofar as it accorded full faith and credit to the original New York decree. It need not be enforced to the extent, if any, it attempted to modify the original custody terms.
Of course, nothing in the Texas court’s reaffirmation on full faith and credit of the New York decree cán be said to have deprived this State of its continuing jurisdiction under the PKPA to modify its own custody determination.
In conclusion, this court finds that New York has jurisdiction pursuant to the Parental Kidnaping Prevention Act and the Uniform Child Custody Jurisdiction Act to entertain defendant’s application to modify the prior New York custody decree, despite the interim Texas order.
In construing the PKPA, the court is cognizant that one of the purposes of this legislation is to “deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards” (94 US Stat 3569, Pub L 96-611, § 7, subd [c], par [6]). Given this statemetit of purpose, the court cannot ignore defendant’s unrefuted allegations that plaintiff in effect abducted the child Theresa from New York to Texas.
Finally, the court notes, without condoning defendant’s default in the Texas proceeding, that there has never been a plenary hearing on the issue of custody of these two children.
The court does not address any issues which may remain concerning jurisdiction to award child support, as opposed to custody, inasmuch as they are contingent upon the outcome of the custody determination.
*825 An appropriate order in accordance with the above, referring the matter to a hearing, may be submitted.