Enid **BARDEN**, formerly known as Enid Blau, Petitioner,

v.

**Jeffrey M. BLAU, Respondent.**

No. 83SC376.

Supreme Court of Colorado, En Banc.

Jan. 13, 1986.

As Modified on Denial of Rehearing Jan. 31, 1986.

Pred and Miller, Ronald S. Pred, Denver, David Bottger, Grand Junction, for petitioner.

Thomas H. Melton, P.C., Thomas H. Melton, Denver, for respondent.

NEIGHBORS, Justice.

We granted certiorari to review the court of appeals' decision in *Barden v. Blau*, 678 P.2d 1031 (Colo.App.1983), to consider whether, under the circumstances of this case, Colorado courts have jurisdiction under the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), §§ 14–13–101 through –126, 6 C.R.S. (1973 & 1985 Supp.), to modify visitation rights and, if so, whether such jurisdiction should be exercised. The court of appeals affirmed the judgment of the trial court which held that Colorado had subject matter jurisdiction under the U.C.C.J.A. because Colorado was the child's home state at the time the dissolution of marriage action was commenced. We reverse and remand to the court of appeals with directions to return the case to the district court for further proceedings.

## I.

The marriage of petitioner, Enid Barden (formerly Enid Blau), and respondent, Jeffrey M. Blau, was dissolved by a decree entered by the Denver District Court in 1974. The decree incorporated the parties' property settlement agreement, granted the mother custody of their daughter and provided reasonable visitation rights to the father. The agreement permitted the mother to move from the State of Colorado with the child subject to the condition that if she did so, the father was entitled to "enlarged rights of visitation." In January 1975, the mother and the child moved to Michigan where they have since resided. The child has visited her father and other relatives in Colorado approximately twice per year since she moved to Michigan.

Beginning in 1980, the mother filed a series of motions in the Denver District Court and the father responded with motions of his own. In the course of this exchange of pleadings, the father, on July 29, 1981, filed a motion to schedule visitation in accordance with the terms of the agreement providing for enlarged visitation rights upon the child's removal to another state. In a motion filed in November 1981, the mother asked the trial court to dismiss the father's motion. She asserted that under the U.C.C.J.A., §§ 14–13–101 through –126, 6 C.R.S. (1973 & 1985 Supp.), Colorado does not have subject matter jurisdiction over custody issues.[1]

A hearing on the mother's motion was held on February 17, 1982. In its order of March 6, 1982, the trial court denied the motion to dismiss and ruled that Colorado had subject matter jurisdiction under the U.C.C.J.A., § 14–13–104(1)(a), because Colo-

---

**1.** The other motions filed in this case include the following:

Petitioner's Motion to Increase Child Support
Petitioner's Motion for Contempt Citation (Based on respondent's failure to pay child's private school tuition in accordance with the terms of the separation agreement)
Respondent's Motion for Contempt Citation (Based on petitioner's refusal .to permit enlarged visitation upon moving to Michigan, as provided for in the separation agreement)

Respondent's Motion to Modify and Clarify Separation Agreement (Provisions regarding visitation)
Respondent's Motion for Contempt Citation (Based on petitioner's refusal to comply with court order concerning visitation during December 1981)

Except for the challenge to the district court's jurisdiction to enter the orders to which the contempt citations were directed, the trial court's rulings on these matters have not been contested on appeal.

rado was the child's home state at "the time of commencement of the proceeding." The trial judge construed the phrase, "the time of commencement of the proceeding," to refer to the initiation of the dissolution action in 1973. The judge also ruled that the mother was estopped from challenging the court's jurisdiction because she had invoked the jurisdiction of Colorado's courts when she filed her motions concerning child support matters. Meanwhile, the mother filed a separate action in Michigan in which she requested that the court there order the father's visitation to take place in that state. The complaint in the Michigan case was filed on February 17, 1982. On April 21, 1982, the trial court in Colorado entered an order enjoining the mother from proceeding in the Michigan action.[2] The court also granted the father's motion to schedule visitation and increased his visitation rights.

The mother appealed the trial court's ruling to the court of appeals. She argued, among other things, that the trial court did not have jurisdiction over custody and visitation issues. The court of appeals affirmed, holding that Colorado has continuing jurisdiction under the U.C.C.J.A.

## II.

A modification of visitation rights is a "custody determination" within the meaning of section 14-13-103(2), 6 C.R.S. (1973). *In re Custody of Bechard,* 40 Colo.App. 516, 577 P.2d 778 (1978). Thus, in deciding whether the district court had subject matter jurisdiction, reference must be made to section 14-13-104, 6 C.R.S. (1973), which contains the provisions governing jurisdiction.

Section 14-13-104(1) enumerates four separate grounds for subject matter jurisdiction.[3] Subsections (a) and (b) establish the two major bases for jurisdiction. Subsection (a) provides for jurisdiction in the child's home state. "Home state" is defined in section 14-13-103(5) as "the state in which the child immediately preceding the time involved lived ... for at least six consecutive months...." Subsection (b) provides an alternative basis for jurisdiction which may be invoked either when there is no home state or when the child and her family have equal or stronger ties with a state other than the home state. Uniform Child Custody Jurisdiction Act § 3 Commissioner's Note, 9 U.L.A. 123 (1968).

The two remaining subsections are limited in their scope. Subsection (c) retains the common law doctrine of *parens patriae* jurisdiction. This jurisdictional basis exists when a child has been abandoned and in emergency cases involving child abuse or neglect; thus, it is reserved for extraordi-

---

**2.** The order was entered after the trial judge in Colorado had conferred by telephone with the judge assigned to the Michigan case. As a result of that conversation, the Michigan court agreed to divest itself of any further jurisdiction.

**3.** Section 14-13-104(1), 6 C.R.S. (1973), provides as follows:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c) of this subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

nary circumstances. *Id.* at 124. Finally, subsection (d) provides a basis for jurisdiction which is subsidiary in nature. It is to be resorted to only if no other state could, or would, assume jurisdiction under the other criteria of section 14–13–104(1). *Id.*

Section 14–13–104 must be construed to achieve the purposes of the U.C.C.J.A. Among the goals of the Act are to render custody decrees in that state which can best resolve the case in the best interests of the child, and to assure that litigation concerning custody matters take place in the state with which the child and her family have the closest connection and where significant evidence concerning the child is most readily available. § 14–13–102, 6 C.R.S. (1973). These purposes reflect one of the underlying policies of the U.C.C.J.A., namely, that only the courts of one state should have responsibility for custody decisions affecting the child. *Petition of Edilson*, 637 P.2d 362 (Colo.1981). Read together, sections 14–13–114 and –115, 6 C.R.S. (1973), express a preference for continuing jurisdiction in the state which issued the original custody order. *McCarron v. District Court*, 671 P.2d 953 (Colo.1983). While the intent of the U.C.C.J.A. is that the original decree state shall have continuing jurisdiction, *id.*, there are certain circumstances under which that state can and should lose jurisdiction. *Id.; In re Custody of Dunn*, 701 P.2d 158 (Colo.App.1985). Jurisdiction can be lost by the erosion of significant connections between the child and the parents and the state in which the original custody decree was entered. *McCarron*, 671 P.2d at 957. Thus, when either of the two major bases for jurisdiction set forth in subsections 14–13–104(1)(a) and (b), 6 C.R.S. (1973), is lacking in the state which entered the original custody decree, that state will lose jurisdiction unless jurisdiction can be asserted under the limited prerequisites established in subsections 14–13–104(1)(c) or (d).

Since section 14–13–104 provides alternative jurisdictional grounds, and because it governs both initial and modification jurisdiction, application of the statute may produce concurrent jurisdiction in more than one state. This result is at odds with the purpose of that section, which is to limit jurisdiction rather than proliferate it. *McCarron*, 671 P.2d at 957; Uniform Child Custody Jurisdiction Act § 3 Commissioner's Note, 9 U.L.A. 124 (1968). Thus, when concurrent jurisdiction is produced, the mechanisms set forth in sections 14–13–106 and –107 of the Act operate to assure that only the courts in one state make the custody decision.

It is for these reasons that we have directed Colorado courts to conduct a two-pronged inquiry in deciding whether to entertain a child custody proceeding filed under the U.C.C.J.A. *McCarron*, 671 P.2d at 955; *Johnson v. District Court*, 654 P.2d 827 (Colo.1982). It must first be determined whether jurisdiction exists in this state and, if so, then whether jurisdiction should be exercised.

The district court and the court of appeals relied on *In re Marriage of Nicholson*, 648 P.2d 681 (Colo.App.1982), in holding that Colorado courts have jurisdiction under section 14–13–104(1)(a), which provides:

A court of this state ... has jurisdiction to make a child custody determination ... if: (a) This state is the home state of the child at the time of commencement of the proceeding....

In construing this provision, the court of appeals in *Nicholson* concluded that "the time of commencement of the proceeding" refers to the commencement of the original dissolution proceeding in which the initial custody decree was rendered. Petitioner argues, on the other hand, that the phrase "the time of commencement of the proceeding" does not refer to the commencement of the initial dissolution action, but instead to the commencement of the custody proceeding then pending before the court, which in this case is the father's motion to schedule visitation.

Our recent decision in *McCarron* impliedly addressed the issue before us. There, we held that Colorado courts had home state jurisdiction under section 14–13–104(1)(a). In making that determination,

we looked to the fact that the child had lived in Colorado for more than six months prior to the time the father filed his custody petition. Had we read "the time of commencement of the proceeding" to refer to the initial dissolution action which resulted in the rendition of a custody decree, we would have concluded that home state jurisdiction existed in Oklahoma rather than Colorado. To similar effect, *see, e.g., Roberts v. District Court,* 198 Colo. 79, 596 P.2d 65 (1979); *Kraft v. District Court,* 197 Colo. 10, 593 P.2d 321 (1979); *Nelson v. District Court,* 186 Colo. 381, 527 P.2d 811 (1974); *Wheeler v. District Court,* 186 Colo. 218, 526 P.2d 658 (1974); *In re Custody of Dunn,* 701 P.2d 158 (Colo.App.1985); *In re Custody of Glass,* 36 Colo.App. 91, 537 P.2d 1092 (1975).

The overwhelming number of courts in other jurisdictions interpret the U.C.C.J.A.'s home state jurisdiction provision in a like manner. For example, in *L.F. v. G.W.F.,* 183 N.J.Super. 195, 443 A.2d 751 (1982), the court held that the home state of the child was to be determined at the time the father's application to modify a visitation order was filed because that was the most immediate matter being considered by the court. A similar result was reached in *Levy v. Levy,* 105 Ill.App.3d 355, 61 Ill.Dec. 247, 434 N.E.2d 400 (1982). There, the Illinois court's holding that it did not have home state jurisdiction was based on the fact that the child had not lived in Illinois for a period of six consecutive months immediately preceding the commencement of the father's action to enjoin the mother from seeking a custody modification order in a New York court. *See also Walsh v. Walsh,* 117 Misc.2d 815, 458 N.Y.S.2d 835 (1983), in which the New York court found that it had home state jurisdiction under the U.C.C.J.A. because the child had lived continuously in that state from the time of the divorce, *including* the six consecutive months immediately

preceding the application to modify the custody award.

We hold that the words "the proceeding," as contained in the phrase "the time of commencement of the proceeding," mean the pending motion affecting custody or visitation. To the extent that our holding is inconsistent with *In re Marriage of Nicholson,* 648 P.2d 681 (Colo.App.1982), we expressly overrule that case.

To adopt a contrary rule would generally lead to the unsatisfactory principle that the state which issued the original custody decree retains perpetual jurisdiction, since it most often is the child's home state at the time that action is filed. Such a result would in many cases contravene the U.C.C.J.A.'s expressed goal of assuring that litigation concerning custody matters take place in the state with which the child and her family have the closest connection and where significant evidence concerning the child is available. Moreover, such an approach is contrary to the Act's definition of "home state" as "the state in which the child immediately preceding the time involved lived ... for at least six consecutive months...." § 14–13–103(5), 6 C.R.S. (1973). Finally, to limit the meaning of "the time of commencement of the proceeding" to the initial action which resulted in the entry of a custody decree is contrary to the U.C.C.J.A.'s explicit direction that "custody proceeding" be given a broad interpretation. Uniform Child Custody Jurisdiction Act § 2 Commissioner's Note, 9 U.L.A. 120 (1968).[4]

We conclude that Colorado does not have home state jurisdiction under section 14–13–104(1)(a) since the child lived in Michigan during the six-month period preceding the filing of the father's motion to schedule visitation. It may be, however, that jurisdiction exists under section 14–13–104(1)(b). Since both the district court and the court of appeals ruled that Colorado

---

**4.** "Custody proceeding" is defined as follows: "Custody proceeding" includes proceedings in which a custody determination is one of several issues, such as an action for divorce, dissolution of marriage, or separation, and includes child neglect and dependency proceedings.

§ 14–13–103(3), 6 C.R.S. (1973). The use of the word "includes" was intended to ensure a broad interpretation of "custody proceeding," rather than to limit the term to the proceedings listed.

had home state jurisdiction, neither court reached the question of whether "significant connection" jurisdiction under section 14–13–104(1)(b) exists in Colorado. The record on appeal does not provide sufficient uncontroverted evidence for us to make that determination as a matter of law. We therefore remand the case to the trial court for a determination of whether there is jurisdiction under section 14–13–104(1)(b). We leave it to the discretion of the trial court to decide whether it is necessary to take additional evidence on the matter.[5] Should the court find that Colorado does have jurisdiction pursuant to 104(1)(b), it must then proceed to the second step of the jurisdictional analysis and decide whether that jurisdiction should be exercised. *McCarron,* 671 P.2d at 955; *Johnson,* 654 P.2d at 827.

The judgment of the court of appeals is reversed. The case is remanded to the court of appeals with directions to return the matter to the district court for further proceedings in accordance with this opinion.