720 P.2d 290

**STATE of New Mexico, ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner,**

v.

**Kathy Latham AVINGER, Respondent.**

**No. 16134.**

Supreme Court of New Mexico.

May 19, 1986.

Rehearing Denied June 24, 1986.

Richard J. Rubin, General Counsel, Ellen Souberman, John Petoskey, Asst. Attys. Gen., Santa Fe, for petitioner.

Poole, Tinnin & Martin, Barbara L. Shapiro, Sarah Curry Smith, Albuquerque, for respondent.

## OPINION

FEDERICI, Justice.

The Department of Human Services (DHS) filed a child neglect petition against Kathy Latham Avinger (Avinger) under the Children's Code, NMSA 1978, Sections 32–1–1 to –53 (Repl.Pamp.1981) on November 6, 1984. Avinger raised jurisdictional issues under New Mexico's Child Custody Jurisdiction Act (CCJA), NMSA 1978, Sections 40–10–1 to –24 (Repl.Pamp.1983), based on the fact that she had been awarded custody of the subject children under a Texas divorce decree. No party raised or briefed the application of the federal Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. Section 1738A (1982) to the facts of this case. DHS had obtained custody of the children by an ex parte order on November 5, 1984. After a temporary custody hearing on the November 6, 1984 neglect petition, the children's court found probable cause for neglect and abandonment and continued custody of the children in DHS by its order of December 11, 1984. An adjudicatory hearing was held on January 4, 1985. The children's court findings and conclusions were filed on February 1, 1985. The trial court held that it had jurisdiction under Section 32–1–9 of the Children's Code.

The Court of Appeals reversed the children's court, 104 N.M. 355, 721 P.2d 781, notwithstanding DHS position that the lower court had jurisdiction under Section 40–10–4(A)(3) of the CCJA to act in an emergency to protect children present in New Mexico. The Court of Appeals held that the CCJA provision relating to modification of custody decrees, Section 40–10–15(A), and the definitions of "custody determination" and "modification decree," Section 40–10–3(B) & (G), applied to a child neglect proceeding and therefore the children's court was required to defer to the jurisdiction of the Texas divorce court. The Court of Appeals decision upheld the children's court ex parte custody order of November 5, 1984, and the temporary custody order of December 11, 1984, both of which were made under the authority of Section 40–10–4(A)(3), but vacated the adjudicatory order of February 1, 1985. *The Court of Appeals premised its conclusion on the basis that the PKPA (federal act) applied to this proceeding even if Section 40–10–15(A) did not apply and that the application of federal law limited the authority of the children's court.* We reverse the Court of Appeals opinion on the applicability of the PKPA.

The questions presented for review are: (1) whether the Court of Appeals correctly extended the PKPA to cover "child neglect and dependency proceedings" under the CCJA; and (2) whether the Court of Appeals misapplied the limitations of Section 40–10–15(A) to the emergency jurisdiction provision of Section 40–10–4(A)(3)(b). These are questions of first impression in New Mexico.

## I. Does the PKPA Cover and Preempt "Child Neglect and Dependency Proceedings" Under the CCJA.

This Court has held that the PKPA applies in *child custody disputes* across be-

tween parents across state lines and that New Mexico courts must apply the PKPA in such cases. *Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522 (1982); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (1982). This Court to date has not addressed the issue of the application of the PKPA to *child neglect and dependency proceedings.*

The PKPA is largely a selective incorporation of the model Uniform Child Custody Jurisdiction Act. *See Parental Kidnaping Prevention Act: Joint Hearings on S.105 Before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary and the Subcomm. on Child and Human Development of the Senate Comm. on Labor and Human Resources,* 96th Cong., 2d Sess. 48 (1980) (hereinafter *PKPA Senate Hearings*). New Mexico's CCJA is also derived from the model act and it is similar to the federal PKPA. A similarity exists between 28 U.S.C. Section 1738A(f) and Section 40–10–15(A) of the CCJA. However, the definitional sections of the federal act and the state act differ in a significant respect that is fundamental to the issues presented here. The state act specifically includes "child neglect and dependency proceedings" as part of the definition of "custody proceeding." § 40–10–3(C). On the other hand, the PKPA definitional section does not include "child neglect and dependency proceedings." *See* 28 U.S.C. §§ 1738A(b)(1)–(8).

It was error for the Court of Appeals in its preemption analysis to hold that the PKPA preempts the CCJA with respect to child neglect and dependency proceedings. There is no basis in the express language of the federal act to conclude that there is preemption of state law on this subject matter. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 198, 629 P.2d 231, 274 (1980). Furthermore, the legislative history of the PKPA demonstrates that the primary purpose of the PKPA is to prevent "child snatching" by parents across state lines. The PKPA is meant to offer a national solution to the problems of interstate enforcement of custody decrees which are not final orders and therefore not subject to the application of full faith and credit principles. *See New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). *See generally PKPA Senate Hearings* at 21–51. The history of the PKPA stresses the importance of preventing "child snatching" and does not contain any reference to child neglect and dependency proceedings. This legislative history demonstrates that there was an absence of Congressional intent to apply the PKPA to child neglect and dependency proceedings. *See United Nuclear Corp. v. General Atomic Co.*

 We hold that the PKPA does not preempt the section of the New Mexico CCJA which specifically includes child neglect and dependency proceedings, where the PKPA is silent with reference to such child neglect and dependency proceedings. We reverse the Court of Appeals on this specific issue.

## II. Children's Court Authority Under the CCJA, Sections 40–10–4(A)(3), 40–10–15, and Section 32–1–9 Under the Children's Code.

The pertinent provisions of Section 32–1–9(A) state that the children's court "has exclusive original jurisdiction of all proceedings under the Children's Code in which * * * a child [is] alleged to be * * * a neglected child * * *."

Section 40–10–15(A) states:

A. If a court of another state has made a custody decree, a district court of New Mexico shall not modify that decree unless:

(1) it appears that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with the Child Custody Jurisdiction Act [40–10–1 to 40–10–24 NMSA 1978] or has declined to assume jurisdiction to modify the decree; and

(2) the district court of New Mexico has jurisdiction.

In this case there is no distinction between "children's court" in Section 32–1–9 and "district court" in Section 40–10–15. The children's court is a division of the district court. *See* § 32–1–3(C) and *In re Guardianship of Arnall*, 94 N.M. 306, 610 P.2d 193 (1980).

█ DHS claims that the limitation on the exercise of jurisdiction stated in Section 40–10–15(A) does not apply when the state initiates proceedings under Section 32–1–9(A). We disagree. Section 40–10–15(A) refers to the modification of a custody decree of another state. The children's court proceeding in New Mexico involved the modification of a custody decree entered in the state of Texas. Section 40–10–3(B) defines a "custody determination" as "a court decision and court orders and instructions providing for the custody of a child * * *." Section 40–10–3(G) defines a "modification decree" as "a custody decree which modifies or replaces a prior custody decree * *." There is no merit to the claim that there has been no modification of the Texas decree where the order of February 1, 1985 continued custody in DHS. *Cf. E.P. v. District Court of Garfield County*, 696 P.2d 254, 263 (Colo.1985) (the Colorado court concluded that "the UCCJA requires the juvenile court to stay any further action on the dependency proceeding and to refer the case to the Wyoming court that entered the original custody decree so that the state of Wyoming can determine whether it will assume jurisdiction over the matter of custody.").

Section 40–10–4(A) states four grounds on which a New Mexico court has jurisdiction under the CCJA. Any one of the four grounds is sufficient to grant jurisdiction to a New Mexico court. *Olsen v. Olsen*, 98 N.M. 644, 651 P.2d 1288 (1982).

█ DHS states that the children's court had jurisdiction under Section 40–10–4(A)(3) because the children were physically present in New Mexico and because the children's court found that the children had been abandoned. The limitation on the authority of the children's court to modify another state's custody decree applies when the state seeks that modification under Section 40–10–4(A)(3). Section 40–10–15(A)(2) states that the district court may not modify a custody decree of another state unless the district court has jurisdiction. We agree that the children's court, as a division of the district court, had jurisdiction. This, however, does not meet the requirement that the New Mexico court "shall not modify" the decree of another state unless the requirements of Section 40–10–15(A)(1) are met. The fact that the children's court had jurisdiction does not answer the question of whether the New Mexico court had authority to modify the Texas decree.

The New Mexico decisions made under the CCJA have involved custody disputes between parents located in different states. *Olsen v. Olsen; Serna v. Salazar*, 98 N.M. 648, 651 P.2d 1292 (1982); *Hester v. Hester*, 100 N.M. 773, 676 P.2d 1338 (Ct.App.1984). DHS asserts that the provisions of the CCJA which are applicable to custody disputes between parents are not applicable to custody proceedings authorized by child neglect statutes where the state is a party. New Mexico, through its DHS, has obtained a court order awarding it custody of the children of a Texas resident to whom a Texas court had previously awarded custody. New Mexico obtained that order on the basis of Section 40–10–4(A)(3), which gives New Mexico district courts jurisdiction to determine custody when the child is physically present in New Mexico and the child has been abandoned *or* an emergency situation exists because the child, as in this case, has been neglected. When a state court proceeds under the abandonment or emergency provisions of Section 40–10–4(A)(3), the court's jurisdiction to modify another state's custody decree is limited by Section 40–10–15(A).

Although the CCJA applies to the state, DHS contends that the primary purpose of the CCJA is to facilitate the orderly resolution of child custody disputes between parents located in different states. We agree that is one of the purposes. *See* §§ 40–10–2(A) to (D). However, Section 40–10–2

does not state that resolution of disputes between parents is the primary purpose. Section 40–10–2(G) states a purpose of facilitating the enforcement of custody decrees of other states. Section 40–10–2(I) states a purpose of making the laws of New Mexico uniform with the laws of other states which enact similar laws.

Section 40–10–15(A)(1) reflects the Legislature's intent that there be a standardized approach to the question of authority to modify another state's custody decree. DHS may dislike this legislative decision, but that dislike provides no basis for this Court to hold that the children's court could modify a Texas decree in violation of Section 40–10–15(A)(1). *Cf. State ex rel. Valles v. Brown*, 97 N.M. 327, 639 P.2d 1181 (1981) (stating that the PKPA preempts the ability of New Mexico courts to modify an out-of-state child custody decree).

DHS also urges that the specific child neglect statute, the Children's Code, applies over the more general statutory statement of the CCJA. The contention is advanced that the exclusive original jurisdiction conferred upon the children's court by Section 32–1–9(A) is a specific provision which controls over both Sections 40–10–4(A)(3) and 40–10–15(A)(1) of the CCJA. Section 32–1–9(A) is specific as to the jurisdiction of the children's court in abandonment or neglect proceedings under the Children's Code. Section 40–10–4(A)(3) is similarly specific as to the jurisdiction of the district court in abandonment or neglect proceedings in an emergency situation. Because no distinction is made between the children's court, which is a division of the district court, and the district court itself, no specific-general issue arises from the grant of jurisdiction found in either Section 32–1–9 or Section 40–10–4(A)(3).

▪ We further do not find that there is a conflict between Section 32–1–9(A) and Section 40–10–15(A)(1). Section 40–10–15(A)(1) neither modifies nor takes away jurisdiction of the children's court but merely limits the ability of the children's court to modify another state's custody

decree where the other state has not given up jurisdiction. There being no conflict, the specific-general rule does not apply.

The applicable rule of construction is that of pari materia. Section 32–1–9(A) and Section 40–10–15(A)(1) are in pari materia because both deal with jurisdiction. *Livingston v. Ewing*, 98 N.M. 685, 652 P.2d 235 (1982). Being in pari materia, they are to be construed together, if possible, to give effect to the provisions of both statutes. *State ex rel. State Park and Recreation Commission v. New Mexico State Authority*, 76 N.M. 1, 411 P.2d 984 (1966). *Accord E.P. v. District Court of Garfield County*, 696 P.2d 254 (Colo.1985). Our construction, that Section 32–1–9(A) gives the children's court the exclusive authority to act, and that Section 40–10–15(A) limits when that authority is to be exercised, gives effect to both statutes.

▪ The foregoing disposes of DHS's claim that the limitation in the exercise of jurisdiction does not apply. Section 40–10–15(A) does apply. There is a limitation upon the children's court authority to modify the Texas court's decree.

**III. Children's Court Authority Under the Facts.**

This issue does not involve the authority of the children's court to issue the temporary orders of November 5, 1984, and December 11, 1984. No issue is raised as to those orders. *See E.P. v. District Court of Garfield County.* This issue involves the authority of the children's court to issue the order of February 1, 1985.

▪ The record shows that Texas had been the children's home state within six months of the commencement of proceedings in New Mexico. The children were brought to New Mexico by relatives. The custody determination was made by a Texas court in a dissolution of marriage proceeding. Avinger was a Texas resident and there is nothing in the record which indicates that the Texas court, under Texas law, lacked jurisdiction to determine child custody. Avinger has remained a Texas resident throughout the course of the pro-

ceedings conducted in New Mexico. Under Section 40–10–15(A), the children's court lacked the authority to modify the Texas custody decree unless the Texas court no longer had jurisdiction or had declined to exercise jurisdiction to modify its custody decree. There is nothing in the record which indicates that at the time of the children's court proceeding, Texas no longer had jurisdiction or that Texas had declined to exercise such jurisdiction.

There being no basis upon which the children's court could modify the Texas custody decree, the children's court lacked authority to enter its order of February 1, 1985. We affirm the Court of Appeals on this issue.

The order of February 1, 1985 is vacated. The children's court is directed to comply with Section 40–10–15(A) as a prerequisite to further proceedings in connection with custody modification.

IT IS SO ORDERED.

RIORDAN, C.J., SOSA, Senior J., and STOWERS, J., concur.

WALTERS, J., concurs in part, dissents in part.

WALTERS, Justice (concurring in part, dissenting in part).

I concur in that part of the majority opinion which holds that CCJA Section 40–10–15(A) limits the children's court's jurisdiction, under Sections 40–10–4(A)(3) and 32–1–9, to determine custody in child neglect and dependency proceedings, pointing out, however, that the CCJA applies only between states that have enacted the same or similar legislation, NMSA 1978, § 40–10–24 (Repl.Pamp.1983). Texas has adopted the UCCJA. *See* Tex.Fam.Code Annot. §§ 11.51–11.75 (Vernon Supp.1986). Therefore CCJA Section 40–10–15(A) limits the children's court's authority to modify a prior Texas custody decree.

On the other hand, there are other considerations that should be addressed. Moreover, I do not agree that the PKPA does not apply, and my comments follow.

## I. Emergency Exception to CCJA.

I am concerned about the scope of the "emergency" exception to Section 40–10–15(A) which is tacitly recognized for the first time in New Mexico by the majority's assertion that "[t]his issue does not involve the authority of the children's court to issue the temporary orders of November 5, 1984 and December 11, 1984. No issue is raised as to those orders."

The judicially-created emergency exception to Section 40–10–15(A) is necessarily flexible and therefore subject to abuse. R. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn.L.Rev. 711, 863 (1982) [hereinafter cited as *Coombs* ]. I would have preferred that the majority include some specific guidelines in its opinion regarding the scope of the Section 40–10–4(A)(3) emergency *parens patriae* jurisdiction, perhaps adopting the following reasoning and language of the Colorado Supreme Court:

[W]here an emergency exists affecting the immediate needs and welfare of the child, a court may enter appropriate orders for the protection of the child even if its orders contravene those of a sister state that still retains jurisdiction over custody. An "emergency," however, is not a talisman which, by its mere inclusion in a modification petition, removes those salutory impediments to jurisdictional competition and conflict established by the UCCJA. *The exercise of parens patriae jurisdiction should be limited to those cases where there is substantial evidence of a grave emergency affecting the immediate welfare of the child.*

*Brock v. District Court of County of Boulder,* 620 P.2d 11, 14 (Colo.1980) (emphasis added, citations omitted).

The instant case satisfies the *Brock* test for *parens patriae* jurisdiction in that: (1) there was substantial evidence in the form of the first-hand knowledge of the New Mexico Department of Human Services (DHS) and foster parents who had observed the children's developmental retar-

dation and had been unsuccessful in locating the mother; and (2) the mother's subsequent attempts to remove the children from foster care in New Mexico posed a threat to the immediate welfare of the children and created a grave danger that their developmental problems and home environment might never be investigated or treated.

Once the test for emergency *parens patriae* jurisdiction has been satisfied, judicial relief should not extend beyond the issuance of temporary protective orders pending application to the court of the sister state for appropriate modification of its prior custody decree or an explicit renunciation by that state of its present jurisdiction to modify. *Brock*, 620 P.2d at 14; *E.P. v. District Court*, 696 P.2d 254, 263 (Colo.1985). Normally such application can be made by a phone consultation between the judges of the sister states, which consultation is subsequently memorialized by an order or memorandum from the forum that entered the earlier decree. *Green v. Green*, 87 Mich.App. 706, 711–12, 276 N.W.2d 472, 474–75 (1978). Only when there are compelling reasons, articulated in the record, that render such out-of-state application impractical, should a New Mexico court grant anything but temporary relief under its *parens patriae* jurisdiction. *Brock*, 620 P.2d at 14.

## II. Applicability of PKPA.

I am fearful of the consequences of holding, as the majority does, that "the PKPA does not preempt the Sections of the New Mexico CCJA which include child neglect and dependency proceedings, where the PKPA is silent with reference to such child neglect and dependency proceedings." I do not read the opinion of the court of appeals as holding that the PKPA preempts the UCCJA except where New Mexico law is contrary to the PKPA. That court stated that both the CCJA and PKPA *limit* the children's court's jurisdiction to modify the Texas decree. *See United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 199, 629 P.2d 231, 275 (1980),

*appeal dismissed*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981) (preemption may be inferred where there is a direct and positive conflict or repugnancy between state and federal laws).

The conclusion of this court that Congress did not intend for the PKPA to apply to child neglect and dependency proceedings appears to be based on the petitioner's characterization in its petition for certiorari of the definitional section and legislative history of the PKPA. Respondent's argument fully meets that issue.

Although it is true that the PKPA does not spell out "child neglect and dependency proceedings" as part of a "custody proceedings" definition, neglect and dependency proceedings are not thereby removed from the purview of PKPA. Both the statutory language and explicit congressional purposes of the Act unmistakably mandate application of the PKPA to *any* proceeding in which modification of a foreign custody decree is at issue, regardless of how those proceedings are labeled or defined by a state.

### (a) Statutory Language

The PKPA does not include "child neglect and dependency proceedings" within the definition of "custody proceedings" for the simple reason that the PKPA contains no definition of "custody proceedings." *Compare* NMSA 1978, § 40–10–3 with 28 U.S.C. § 1738A(b). The CCJA, on the other hand, defines "custody proceeding" as "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and * * * child neglect and dependency proceedings." § 40–10–3(C).

If the absence of this language in the PKPA renders the PKPA inapplicable to "child neglect and dependency proceedings," then, logically, the PKPA is also inapplicable to an "action for divorce or separation." One could take the equally untenable position that because the PKPA, unlike the CCJA, contains *no* explicit definition of "custody decree," *see* NMSA 1978,

§ 40–10–3(D), the PKPA does not apply to custody decrees.

Section 40–10–3(C) identifies divorce, separation, and neglect and dependency proceedings only as examples of "custody proceedings." The operative language of the statute, however, is that "custody proceedings" include *any* proceeding in which a "custody determination" is at issue.

Both the CCJA and PKPA define "custody determination," in essence, as an action by a court which provides for the custody or visitation of a child. *See* NMSA 1978, § 40–10–3(B); 28 U.S.C. § 1738A(b)(3). Likewise, both the state and federal acts define the term "modification" or "modification decree," in part, as a custody determination or decree which modifies or replaces a prior custody determination or decree. NMSA 1978, § 40–10–3(G); 28 U.S.C. § 1738A(b)(5).

I agree that the children's court order of February 1st was both a "custody determination" and a "modification decree" within the meaning of Sections 40–10–3(B) and (G) of the CCJA. But the PKPA defines these terms in a manner that closely parallels the CCJA; thus, we do great damage, I think, to the PKPA's intent if we ignore the reality of the children's court order as precisely a "custody determination" and "modification" to which both the PKPA and the CCJA apply.

The language of the PKPA which binds us is explicit:

> The appropriate authorities of every State shall enforce * * * and shall not *modify* * * * any child *custody determination* made * * * by a court of another State.

28 U.S.C. § 1738A(a) (my emphasis).

Under the statutory language, then, if there are "kidnapping" facts which trigger the PKPA provisions, that Act must apply to any proceeding in which a state court seeks to modify a prior foreign custody determination.

**(b) Legislative Purposes**

I have no dispute with the majority's observation that the legislative history demonstrates a major purpose of the PKPA to be deterrence of "child snatching." But the federal act is not limited to child snatching solely by parents. *See, e.g.,* 28 U.S.C. § 1738A, subsections (b)(2) (definition of "contestant") and (b)(6) (definition of "person acting as parent").

While legislative history is helpful in divining congressional intent, the express Congressional Findings and Declaration of Purpose require no divinations or assumptions. Those Findings and Declaration are set forth in Pub.L. No. 96–611 § 7 (1980), which appears as a Note following 28 U.S.C.A. § 1738A (West Supp.1985). The Findings state, in part:

(a) The Congress finds that—

(1) there is a large and growing number of cases annually involving disputes between *persons* claiming rights of custody and visitation of children under the laws * * * of different states * * *.

(2) the laws and practices by which the courts of those jurisdictions determine their jurisdiction to decide such disputes * * * are often inconsistent and conflicting;

(3) those characteristics of the law and practice in such cases * * * contribute to a tendency of *parties* involved in such disputes to frequently resort to the seizure, restraint, *concealment, and interstate transportation of children,* the disregard of court orders [and] excessive relitigation of cases * * * and

(4) among the results of those conditions and activities are * * * *harm to the welfare of children* and their parents and *other custodians.*

(My emphasis.) The quoted findings indicate that one of the problems sought to be addressed by the PKPA is forum shopping, *i.e.,* the interstate transportation and concealment of children by persons (whether parents or not) who seek to obtain custody under a foreign decree inconsistent or conflicting with the initial custody decree. Regardless of the kindly motives of the persons in the instant case, there was an interstate transportation and, at least initially (as the trial court found), a concealment of Avinger's children.

If we assume for a moment that the children had been brought to New Mexico by their father, and that he had sought to obtain custody by alleging that his ex-wife had been abusing and neglecting the children, it is clear that under the New Mexico Children's Code he would have been required to refer his complaint to DHS. In turn, DHS would have been required to investigate. *See* NMSA 1978, § 32–1–14(A) and (F) (Repl.Pamp.1981). Following the investigation, DHS could then have recommended the filing of an abuse or neglect petition. §§ 32–1–14(G), 32–1–17(B). Had such a petition been filed, the children would have become the subjects of a child neglect and dependency proceeding.

Under the majority opinion, and with such assumed facts, the children's court would then be faced with a confusing and ambiguous state of the law wherein the PKPA *would not* apply to child neglect and dependency proceedings, but would cover interstate child-snatching by a parent. The holding that the PKPA does not apply to the above hypothetical fact situation allows a forum-shopping parent to avoid the PKPA by simply transporting a child to New Mexico and alleging that the other parent or contestant has abandoned, abused or neglected the child. Neither the Congressional Findings nor its Declaration of Purpose support such a result.

The Declaration of Purpose lists six goals of the PKPA closely paralleling six of the nine purposes adopted by our legislature as part of New Mexico's CCJA. *See* NMSA 1978, § 4–10–2 (Repl.Pamp.1983). There is nothing in the three unlisted purposes unique to the CCJA that would intimate congressional intent to exempt child neglect and dependency proceedings from coverage of the PKPA. *See* § 40–10–2(C),(F),(I). On the other hand, the stated purposes common to both the state and federal acts leave no doubt that child neglect and dependency proceedings are, in fact, governed equally by the PKPA. Indeed, five of the six PKPA purposes relate expressly to the welfare or status of the child. (*Compare* NMSA 1978, § 40–1–2(A), (B), (D), (E), (H) and Pub.L. 96–611

§ 7(c)(1), (2), (4), (5), (6).) Clearly, the overriding purpose of the PKPA is to *protect children* from the results of an interstate game of custodial ping-pong.

The majority opinion effectively removes that protection from children who are the subjects of proceedings labeled locally as "neglect and dependency" proceedings.

The absence of PKPA protection might not seem serious at first blush, in light of the fact that New Mexico has adopted the UCCJA which in some respects is akin to the PKPA and is the source from which the PKPA was derived. However, the PKPA is interstitial in nature. *Coombs,* 66 Minn. L.Rev. at 830. It was intended to complement state law and to apply in those instances where state law is silent, inapplicable, or contrary to the federal act. *Id.* at 832–34. Additionally, the state and federal statutes, although similar, are not identical, and there will be instances where the application of each produces a different result. *See id.* at 815–46. We have recognized that, in such cases, federal law will necessarily preempt state law which would produce a contrary result. *See Serna v. Salazar,* 98 N.M. 648, 651, 651 P.2d 1292, 1295 (1982).

I would therefore affirm the Court of Appeals and hold that the PKPA applies to limit the children's court's exercise of jurisdiction under Sections 32–1–9 and 40–10–4(A)(3). I would, however, correct what I consider to be one flaw in the court of appeals' PKPA analysis.

### (c) Error in Court of Appeals' PKPA Analysis.

The PKPA provides that a state court shall enforce and shall not modify (except as provided in subsection (f)) a *prior* custody determination *made consistently with the provisions of the PKPA* by another state. 28 U.S.C. § 1738A(a). Thus, the first step in applying the PKPA is to determine whether the prior decree was issued consistently with the provisions of the federal act. (I would here observe, as an aside, that the fact that the CCJA does not require an analysis of the prior court's *initial* jurisdiction is one example of how

the state and federal acts could produce different results.)

Subsection (c) of the PKPA sets forth the test for determining whether a prior custody determination was made consistently with provisions of the PKPA. Subsection (c)(1) requires that the prior court must have had jurisdiction under its own state law. Subsection (c)(2) requires that *one* of four *additional* criteria must have been met.

The court of appeals indicated that there was nothing in the record to show that Texas did not initially have jurisdiction under Texas law as required by Subsection (c)(1). *Cf. Mitchell v. Mitchell*, 437 So.2d 122, 126 (Ala.Civ.App.1982) (party seeking to enforce judgment of another state ordinarily meets initial burden of proof by introduction of properly authenticated copy of judgment). The court of appeals, however, applied the criteria of Subsection (c)(2) *as of the date that proceedings were commenced in New Mexico*. If the purpose of subsection (c) is to determine whether the *prior* decree was made consistently with the PKPA, then the criteria of subsection (c)(2) must of course be applied as of the date the divorce and custody proceeding was filed in Texas. *See Mitchell v. Mitchell*, 437 So.2d at 125.

The record does not indicate when Avinger filed her petition for divorce, but there was evidence that the children had been lifelong residents of Texas before they were taken out of that state in 1984. It is therefore reasonable to infer that, when Avinger filed for divorce, Texas had "home state" jurisdiction under Texas Fam.Code Ann. Section 11.53(a)(1)(A) or (B)(Vernon Supp.1986). Consequently, the requirement of PKPA Subsection (c)(1) was met. The facts set forth above also satisfy the "home state" requirement of PKPA Subsection (c)(2). *See* 28 U.S.C. § 1738A(c)(2)(A).

In connection with this issue, *Serna v. Salazar,* wherein we stated that a New Mexico court must assume, for lack of contrary indication, that a prior foreign decree has been made consistently with the PKPA, 98 N.M. at 651, 651 P.2d at 1295,

should be clarified. *Serna* correctly shifted the burden of proof to the party challenging the prior court's jurisdiction once the existence of a prior judgment was established. *See Mitchell*, 437 So.2d at 126. But there is no reason to rely on an assumption where, as here, there is uncontroverted record evidence to satisfy an inference of the "home state" provisions of Section 1738A(c).

Once it appears that a sister state has made its prior decree in conformity with the PKPA, a New Mexico court may modify that decree only as provided in subsection (f). § 1738A(a). Subsection (f) provides that the decree may be modified if the modifying court presently has jurisdiction, and the prior court no longer has jurisdiction or has declined to exercise its jurisdiction. Subsection (d) also must be considered, because it states that the *prior* court *retains* jurisdiction so long as the provisions of subsection (c)(1) (jurisdiction under its own state law) continue to be met *and* such state remains the residence of the child OR of any contestant.

If the children conceivably were not "residents" of Texas as of November 5, 1984, the date when proceedings were commenced in New Mexico, it was because they had been removed without authority; but the mother (a "contestant") continued to be a Texas resident. The record contains no indication that Avinger ever ceased to be a Texas resident. Consequently, in 1984 and 1985, Texas still had jurisdiction under Tex.Fam.Code Ann. § 11.53(a)(1)(B). PKPA Section 1738A(f), therefore, precluded the New Mexico children's court from modifying the Texas decree unless Texas declined to exercise its jurisdiction.

I would emphasize a final point: the PKPA, unlike the New Mexico CCJA, includes "temporary orders" as part of its definition of "custody determination." *Compare* § 1738A(b)(3) *with* § 40–10–3(B). The children's court's *ex parte* and temporary orders of November 5 and December 11, 1984, were thus at least arguably in violation of the PKPA. *See Coombs,* 60 Minn.L.Rev. at 863–64. That observation makes it important to distinguish between

emergency and nonemergency temporary orders, and to recognize that the earlier temporary orders were necessary to deal with an emergency. The order of February 1, 1985 was also temporary in that it granted custody to DHS for no longer than six months. It was not, however, a response to an emergent situation; it was a determination on the merits and, as such, beyond the authority of the children's court, under both the CCJA and PKPA, until the Texas court declined to exercise its jurisdiction. I am of the opinion that the February 1st order should be vacated and the matter returned to the children's court for a resolution of the Texas court's inclination to exercise its original jurisdiction. If Texas should decline, the children's court could then conduct any such proceedings as may be necessary to re-enter or reconsider its February 1985 order.

To the extent, then, that my views of the PKPA in relation to the New Mexico's Child Custody Jurisdiction Act differ from those of the majority, I respectfully dissent.