876 P.2d 1 (1993)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of K.G., a Child,
and Concerning M.G., Respondent,
and
L.G., Respondent-Appellant.
No. 92CA1381.
Colorado Court of Appeals, Div. I.
July 29, 1993.
Rehearing Denied October 28, 1993.
Certiorari Granted April 4, 1994.
*3 Beth Whittier, County Atty., Judith L. Hufford, Chief Deputy County Atty., Colorado Springs, for petitioner-appellee.
Elizabeth Tormoen Hickey, Colorado Springs, guardian ad litem.
The Law Office of John B. Ciccolella, P.C., John B. Ciccolella, Colorado Springs, for respondent-appellant.
*2 Opinion by Chief Judge STERNBERG.
Respondent, L.G. (father), appeals both a judgment entered on a jury verdict determining that K.G., his daughter, was neglected and dependent and a subsequent order requiring him to undergo evaluation and treatment and modifying his parenting time rights (formerly known as visitation rights, see Colo.Sess.Laws 1993, ch. 165, § 14-10-129). We affirm in part and reverse in part.
M.G. (mother) and father were divorced in Oklahoma in February of 1990. The divorce decree awarded permanent custody of their then three-year-old daughter, K.G., to mother with visitation rights in father. Mother and child moved to Colorado in March of 1990, where they have resided since. Father remained in Oklahoma.
In February 1991, the child visited father in Oklahoma. After her return, the child alleged to her pediatrician that father had sexually molested her. The pediatrician reported the allegation to the El Paso County Department of Social Services (Department), which initiated an investigation.
On April 16, 1991, the Department filed a petition in dependency and neglect in Colorado. The Colorado court entered preliminary orders prohibiting the child from leaving the state but permitting contact between father and the child in Colorado. A Guardian Ad Litem (GAL) was appointed to represent the child in the action. The court denied father's motion to dismiss based on lack of jurisdiction in Colorado.
On April 11, 1991, just prior to the Department's filing in Colorado, mother appeared in Oklahoma district court seeking to modify the original custody determination and terminate father's visitation rights. That court determined that it had continuing jurisdiction over the custody determination and denied mother's subsequent motion to decline jurisdiction in favor of Colorado.
The Oklahoma court ordered that father would continue to have the right to visit K.G. but that all visits would be supervised until a full hearing could be held. The parties entered into a stipulation as to acceptable persons to supervise the visits. The court also ordered that both parties and the child were to be evaluated by clinical psychologists, with the results to be reported to the Oklahoma court, the Colorado court, and the parties' attorneys.
On November 27, 1991, the Oklahoma court entered an order in which it found that mother had failed to meet her burden of proof regarding the allegation of abuse. Consequently, it refused to modify the custody decree or alter father's visitation rights.
*4 Trial was held in Colorado on the Department's petition in April of 1992. The jury answered in the affirmative a question on the verdict form which read: "Is K.G. lacking proper parental care as a result of Respondent L.G.'s acts or failures to act?"
In the following month, the Colorado court entered an order finding that the petition had been sustained by the jury and awarded custody of the child to mother, to be supervised by the Department, pending development of a treatment plan pursuant to § 19-3-508(1), C.R.S. (1986 Repl.Vol. 8B). In August of 1992, it modified the order to approve the treatment plan. The plan included psychological evaluations and treatment for the child and father and ordered that father's parenting time rights be modified to allow only supervised visits during the pendency of the plan.
Father contends that the Colorado court erred when it determined that it had jurisdiction to modify the Oklahoma custody determination. He also contends that the verdict, as an adjudication of the status of the child, is not effective as to him, cannot require him to undergo treatment as it did not identify any specific acts or omissions attributable to him which caused the child to be lacking in parental care, and that, in any event, the court lacked jurisdiction to enter judgment on the verdict as the alleged acts or omissions did not occur in Colorado.
We agree with father's first contention but disagree with the second.

I.

A.
Resolution of the issue of jurisdiction requires us to examine the interplay of the Uniform Child Custody Jurisdiction Acts of Colorado and Oklahoma and the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1988).
Colorado, acting as parens patriae, has the authority to provide for the protection of children within its borders whose health and welfare may be threatened. See Colorado Children's Code, § 19-1-102, et seq., C.R.S. (1986 Repl.Vol. 8B).
Under the Children's Code, the courts of this state have jurisdiction to determine a temporary matter of custody based on a dependency and neglect petition regardless of issues of domicile or provisions of foreign custody decrees. Section 19-3-403, C.R.S. (1992 Cum.Supp.). That jurisdiction, however, exists only while the immediate needs and welfare of the child are in peril. E.P. v. District Court, 696 P.2d 254 (Colo.1985).
Once a child has been adjudicated neglected or dependent, the court is authorized, as part of the disposition decree, to place legal custody of the child in one or both parents, a guardian, a relative, the county department of social services, or a child placement agency. Section 19-3-508(1), C.R.S. (1986 Repl.Vol. 8B).
However, if, as here, the final disposition's custody provisions will modify an existing custody determination from another jurisdiction, the disposition is subject to the provisions of the Uniform Child Custody Jurisdiction Act, § 14-13-101, C.R.S. (1987 Repl.Vol. 6B) (UCCJA). See Barden v. Blau, 712 P.2d 481 (Colo.1986) (modification of visitation rights is a custody determination within the UCCJA).
By the express language of the UCCJA, the term "custody proceeding" includes child neglect and dependency proceedings. Section 14-13-103(3), C.R.S. (1987 Repl.Vol. 6B). Interpreting this language, the supreme court has held that the UCCJA governs a custody determination made during a child neglect and dependency proceeding, even though the petition is brought by the state and is not a private action brought by a parent or other party seeking custody. E.P. v. District Court, supra.
Under the UCCJA, before a Colorado court may modify an existing custody determination, it must follow a two-part analysis.
The first step is to determine whether the court has jurisdiction initially to make a custody determination. In re Custody of Dunn, 701 P.2d 158 (Colo.App.1985).
Jurisdiction is proper under the UCCJA only if certain prerequisites are met. Those *5 pertinent here allow jurisdiction either if this state is the home state of the child in that the child resided here for the six months previous to the determination or if the child and the parents, or the child and at least one contestant, have a significant connection with the state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. See §§ 14-13-104(1)(a) and (b), C.R.S. (1987 Repl.Vol. 6B). These provisions govern jurisdiction for both an initial determination and any subsequent modifications. Barden v. Blau, supra.
As the child in this case was a resident of Colorado for the thirteen months before the incident, we conclude that the court had jurisdiction based on § 14-13-104(1)(a), the home state provision.
However, once the court establishes that it has jurisdiction to modify an existing decree, it must next determine whether it should exercise that jurisdiction. In re Custody of Dunn, supra.
If two states may potentially exercise jurisdiction under the UCCJA, exclusive jurisdiction is generally conferred on the state in which the matter is first raised. In re Lynch v. Lynch, 770 P.2d 1383 (Colo.App. 1989). Accordingly, a Colorado court is prohibited from exercising jurisdiction if, at the time of filing, another state is exercising continuing jurisdiction substantially in conformity with the UCCJA. Sections 14-13-107 and 14-13-114, C.R.S. (1987 Repl.Vol. 6B); Nistico v. District Court, 791 P.2d 1128 (Colo.1990).
Thus, the Colorado court was obligated to recognize and enforce the Oklahoma determination and decline to exercise jurisdiction to modify it unless Oklahoma had declined to exercise jurisdiction or the court determined that Oklahoma no longer had jurisdiction under prerequisites substantially in accordance with the UCCJA. In re Custody of Dunn, supra; § 14-13-115, C.R.S.
The record reflects that the Oklahoma court asserted throughout its proceedings that, based on its status as the court of origination of the decree, it retained jurisdiction and would not decline jurisdiction in favor of Colorado. The record does not reveal that the Oklahoma court made findings to support this determination.
We note that the record also reflects that the Colorado and Oklahoma judges discussed the jurisdiction issue several times, see § 14-13-107(3), C.R.S. (1987 Repl.Vol. 6B), but apparently were unable to agree on a resolution. Although the Colorado court stated during a hearing that it believed that the Oklahoma court had violated the UCCJA by refusing to cooperate and not working with it to resolve the jurisdiction issue, the Colorado court also made no specific findings concerning its exercise of jurisdiction.
In order for us to determine if the Colorado court abused its discretion when it exercised its jurisdiction, we must review the Oklahoma proceedings. If they were not conducted substantially in accordance with the UCCJA, then Oklahoma may properly be deemed no longer to have jurisdiction. In such an inquiry, Colorado courts are free to determine whether the foreign court's proceedings were substantially in conformity with the Colorado UCCJA. Bakke v. District Court, 719 P.2d 313 (Colo.1986).
Further, although the state of origination generally has exclusive jurisdiction, that is not a blanket rule. In re Lynch v. Lynch, supra. Under certain circumstances, the state of original jurisdiction can and should properly be found to have lost jurisdiction. In re Custody of Dunn, supra.
As noted, Colorado had jurisdiction based on the home state provision of the UCCJA. In contrast, Oklahoma met none of the criteria outlined in either the Colorado or the substantially similar Oklahoma jurisdictional prerequisite provisions. Section 14-13-104(1), C.R.S. (1987 Repl.Vol. 6B); Okla. Stat. tit. 43, § 505 (1990).
Oklahoma was not the home state of the child. While the child's visits there may constitute a significant connection with Oklahoma, as the child was a resident of Colorado the substantial evidence concerning the child's present or future care, protection, training, and personal relationships existed in this state.
*6 Although the alleged incident occurred in Oklahoma, testimony of witnesses in Oklahoma could be obtained for a Colorado proceeding, see § 14-13-119, C.R.S. (1987 Repl. Vol. 6B), and the Oklahoma courts could be requested to hold hearings, order social studies, or order parties to appear in a Colorado proceeding. Section 14-13-120, C.R.S. (1987 Repl.Vol. 6B). Finally, the child was not physically present and abandoned in Oklahoma, nor was there an emergency during the pendency of the hearing there. Section 14-13-104(1).
Accordingly, while the Colorado court did not make findings as to the basis for its exercise of jurisdiction, we cannot say that its decision was an abuse of discretion. Nistico v. District Court, supra.

B.
Assuming that the Colorado court was correct in exercising jurisdiction under the UCCJA, we must next determine the applicability and effect of the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1988) (PKPA).
Father contends that, even though Colorado could exercise jurisdiction under the UCCJA, it was obligated to decline to do so under the PKPA. The Department and the GAL argue that the PKPA does not apply to a custody determination made as a result of a dependency and neglect proceeding or, if it does, that Oklahoma did not exercise jurisdiction consistent with the provisions of the PKPA such that Colorado could properly exercise jurisdiction. We agree with father.
We note initially that no Colorado appellate decisions have considered the PKPA since its enactment in 1980. One commentator, characterizing this situation as "remarkable," has suggested that application of the PKPA would have altered the outcome in several significant Colorado decisions. See Coombs, Waking the Dormant PKPA in Colorado, 21 Colo.Law. 2210 (October 1992).
Although the UCCJA was promulgated to unify treatment of child custody disputes among the states, not all states initially adopted the UCCJA. Non-custodial parents exploited that situation by forcibly taking children from the state issuing the decree to another state with less stringent jurisdictional requirements. To discourage that activity and to allocate powers and duties between courts of different states, Congress enacted the PKPA. See Coombs, Progress Under the PKPA, 6 J.Am.Acad. Matrimonial Lawyers 59 (1990).
Despite its title, the PKPA is not limited to cases involving parental kidnapping. It applies generally to situations of interstate custody disputes. See Goldstein, Tragedy of the Interstate Child, A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act, 25 U.C.Davis L.R. 845 (Summer 1992).
Essentially, the PKPA favors continuing jurisdiction in the original state, provided that such state acted in compliance with the PKPA. If it did so, a second state may not exercise jurisdiction and must give full faith and credit to the custody order. The second state must enforce the order and may not modify it unless the original state has lost or declines jurisdiction. 28 U.S.C. § 1738A(f)(2) (1988); Progress Under the PKPA, supra, at 61.
The United States Supreme Court has stated that a state court must satisfy the requirements of the PKPA in order to modify a foreign custody determination. The Court made clear that, under the provisions of the PKPA, once a state properly exercises jurisdiction, other states must give full faith and credit to the determination and no other state may exercise concurrent jurisdiction even if it would be entitled to under its own laws. The Court underscored the importance of the PKPA when it stated that Congress' chief aim in enacting the PKPA was to extend the Full Faith and Credit Clause to custody determinations. Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).
As a threshold issue, we must determine whether the PKPA applies to a custody determination made as a result of a dependency action. As discussed, the UCCJA governs custody determinations made in all custody *7 proceedings including dependency and neglect actions. Section 14-13-103(2), C.R.S. (1987 Repl.Vol. 6B); E.P. v. District Court, supra.
Therefore, we conclude that as the PKPA governs decisions made under the UCCJA, it applies to custody determinations made during child dependency and neglect proceedings. Accord In re Appeal in Pima County, 147 Ariz. 584, 712 P.2d 431 (1986); State in Interest of D.S.K., 792 P.2d 118 (Utah App. 1990); but see State ex rel. Department of Human Services v. Avinger, 104 N.M. 255, 720 P.2d 290 (1986) (court found that PKPA did not apply; legislature subsequently removed dependency and neglect proceedings entirely from New Mexico UCCJA).
To retain jurisdiction under the PKPA, the original state must have initially obtained and must continue to exercise jurisdiction in accordance with its own laws. 28 U.S.C. §§ 1738A(c) (1988). This differs from the UCCJA, which analyzes the other state's actions from the vantage point of substantial compliance with the reviewing state's laws. Tragedy of the Interstate Child, supra, at 923.
That state must also meet one of the five enumerated jurisdictional conditions of the PKPA. The first four (home state; if no home state then significant connection and substantial evidence; abandonment or neglect; no other state claims jurisdiction and asserting jurisdiction is in the child's best interests) are essentially the same as the four jurisdictional provisions of the UCCJA. 28 U.S.C. § 1738A(c)(2)(A)-(D) (1988); see § 14-13-104(1), C.R.S. (1987 Repl.Vol. 6B).
The fifth condition, that for continuing jurisdiction, determines when the power to modify a decision shifts to another court. Under this provision, a court making a determination through exercise of one of the first four conditions retains a legally sufficient tie to the case as long as that court keeps jurisdiction under its own laws and remains the residence of the child or of any contestant. 28 U.S.C. § 1738A(d) (1988); Progress Under the PKPA, supra, at 63.
Once the original state has made a custody determination, another state may modify the determination only if it has jurisdiction and "the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A(f)(2) (1988).
The Department and the GAL contend that Oklahoma did not exercise jurisdiction consistent with the provisions of the PKPA. This, they argue, deprived Oklahoma of jurisdiction and allowed Colorado to assume jurisdiction. We disagree.
Under the PKPA, a court may not exercise jurisdiction in a custody proceeding commenced during the pendency of a proceeding in another state so long as the other state "is exercising jurisdiction consistently with the provisions of [the PKPA] to make a custody determination." 28 U.S.C. § 1738A(g) (1988).
Thus, even though it both had and could exercise jurisdiction under the UCCJA, the Colorado court was required to decline jurisdiction in favor of Oklahoma unless it determined that Oklahoma had declined jurisdiction under its own laws and under the PKPA. 28 U.S.C. § 1738A(g) (1988); see generally Bock v. Bock, 824 P.2d 723 (Alaska 1992); In re Marriage of Zierenberg, 9 Cal.App.4th 1437, 12 Cal.Rptr.2d 187 (1992); In Interest of Shockley, 611 A.2d 508 (Del.1992).
To determine if Oklahoma had jurisdiction under the PKPA, we must first determine whether Oklahoma had jurisdiction under its own laws. 28 U.S.C. § 1738A(c)(1) (1988).
The Oklahoma UCCJA is substantially similar to the Colorado version. See Okla. Stat. tit. 43, § 501 et seq. (1990). An Oklahoma court must go through the same two-part analysis in a custody proceeding as a Colorado court. It must first decide if it has jurisdiction and then if it should exercise that jurisdiction. Holt v. District Court, 626 P.2d 1336 (Okl.1981). It must take into account proceedings in other states and determine whether Oklahoma is an inconvenient forum for the proceeding, with the focus of such determination being the best interests of the child. Okla.Stat. tit. 43, §§ 508, 509 (1990); Miles v. Young, 818 P.2d 1258 (Okl.App. 1991).
*8 Of determinative importance to this case, the Oklahoma Supreme Court has interpreted the jurisdictional provisions of its UCCJA to give different treatment to cases involving initial and modification jurisdiction. G.S. v. Ewing, 786 P.2d 65 (Okl.1990); contra Barden v. Blau, 712 P.2d 481 (Colo.1986).
In G.S. v. Ewing, a divorce decree was issued in Oklahoma. Mother was awarded custody of the two children and then moved to Missouri. Father, who remained in Oklahoma, was awarded visitation rights. While the children were in Oklahoma during a regularly scheduled summer visit with father, mother was hospitalized in Missouri. The visit was extended by consent to allow mother to complete an out-patient treatment plan.
Father enrolled the children in school in Oklahoma. He then filed a motion to modify the custody provisions of the divorce decree and was awarded temporary custody.
Mother moved to dismiss the motion, asserting that Oklahoma lacked jurisdiction as it was not the home state of the children pursuant to Okla.Stat. tit. 43, § 505 (1990) (then Okla.Stat. tit. 10, § 1605 (1980)). The father responded that the court had jurisdiction because of significant connections between the children and the state.
The Oklahoma Supreme Court stated that the parties misunderstood the difference between initial and modification jurisdiction. In concluding that the Oklahoma courts had jurisdiction to resolve the case, the court held that, under the UCCJA, jurisdiction to modify an existing custody decree is reserved for the state which rendered the decree.
The court ruled that: "Jurisdiction remains in the decree state as long as one parent continues to reside in the original state" and if significant parental contact with the child is maintained through visitation. G.S. v. Ewing, 786 P.2d at 69-70. The court said this was true even though the children had lived in another state for six months or more. The court relied upon the statutory provision, now codified as Okla.Stat. tit. 43, § 516 (1990), which provides in pertinent part:
A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:
1. It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and
2. The court of this state has jurisdiction.
The court interpreted this section to confer an "inverted" jurisdiction by prohibiting a non-decreeing state from exercising jurisdiction except in limited circumstances. The court then determined that the language of the statute "emphasizes that the original court is intended to have and to retain exclusive, continuing jurisdiction." G.S. v. Ewing, 786 P.2d at 70. And, it ruled that, after a court renders a custody decree, it retains continuing jurisdiction to modify custody and may lose that jurisdiction only "if both parents have left the state, or if the resident parent has discontinued relations" with the child. G.S. v. Ewing, 786 P.2d at 72.
As the state of the original decree, therefore, Oklahoma has continuing jurisdiction under its laws because father remains a resident of Oklahoma and has exercised his visitation rights. G.S. v. Ewing, supra; see also Application of Guthrie, 792 P.2d 1197 (Okl.App.1990). This satisfies the requirements of 28 U.S.C. § 1738A(c)(1) (1988). Father's continued status as a resident of Oklahoma satisfies 28 U.S.C. § 1738A(d) (1988). The jurisdictional requirements of the PKPA are thus met.
Accordingly, even though Colorado both had jurisdiction and could have exercised that jurisdiction under its UCCJA to modify the Oklahoma custody decree, In re Custody of Dunn, supra, under the PKPA it was required to decline jurisdiction in favor of Oklahoma. Thompson v. Thompson, supra.
Thus, that portion of the judgment which modifies mother's custody and father's visitation rights under the Oklahoma custody determination cannot stand.

II.
Father contends that the verdict, as an adjudication of the status of the child, is *9 not effective as to him and cannot serve as the basis of an order which requires him to undergo treatment. He premises this contention on the assertion that the verdict did not identify any specific acts or omissions attributable to him which caused the child to be lacking in parental care on the fact and that such acts or omissions, if any, did not occur in Colorado. We reject this contention.
Trial was held on the allegation of molestation as claimed by the child and set forth in the second amended petition. The court instructed the jury that it need answer only one of the three questions on the special verdict form, and, if it did so, it need not address the other two. The form contained the following questions:
1. Did the Respondent, L.G., mistreat or abuse K.G.?
2. Is K.G. lacking proper parental care as a result of the Respondent, L.G.'s, acts or failures to act?
3. Is K.G.'s environment injurious to her welfare as a result of the Respondent, L.G.'s acts or failures to act?
The jury answered the second and third questions in the affirmative and did not answer the first question.
Father contends that the second and third questions refer to the status of the child without a finding as to a specific action on his part. Thus, he argues, the court may not order him as part of the treatment plan to undergo treatment as the jury did not find that he did the actions alleged in the petition. We disagree.
The jury verdict determined that the child was dependent and neglected based on the allegations in the second amended petition. The only argument presented to support the finding of dependency was the allegation in the petition that set out the act initially told to the pediatrician by the child and subsequently investigated by the Department. While father asserts that the verdict does not identify a specific act of his that caused the child to be lacking in parental care, he does not contend that the jury's determination rested on some unknown other incident and not the sole allegation concerning him.
Further, the verdict was intended to be a determination of the status of the child, not a specific finding of the acts creating that status. Section 19-3-102, C.R.S. (1986 Repl. Vol. 8B); People in Interest of S.B., 742 P.2d 935 (Colo.App.1987).
Once the jury determines the child's status, it is the court which supervises the creation of and approves the treatment plan. The court has broad discretionary power in crafting a plan. People in Interest of S.S.T., 38 Colo.App. 110, 553 P.2d 82 (1976).
To insure that the plan is "reasonably calculated to render the particular respondent fit to provide adequate parenting" to the child, § 19-3-508(1)(e)(II), C.R.S. (1986 Repl. Vol. 8B), the court, before approving the plan, must hold a dispositional hearing. Section 19-3-507, C.R.S. (1986 Repl.Vol. 8B).
At such hearing, the court must hear evidence on the question of the proper disposition best serving the interests of the child and society. Section 19-3-507(1), C.R.S. (1986 Repl.Vol. 8B). Accordingly, the plan, which is directed towards the respondent, may be based on all the evidence presented to the court and the verdict is but one portion of that evidence.
Here, the court heard the testimony presented to the jury. The court then supervised the development of the treatment plan, which included a dispositional hearing at which father was able to present evidence. At that hearing, father raised the jury verdict issue with the court. The court, while stating that the verdict was "not as specific as I'd like it to be," noted that it would proceed based on the evidence presented both at trial and at the hearing.
Consequently, under the circumstances of this case, we conclude that the court properly ordered a treatment plan compelling action by father even though the jury verdict, which formed part of the basis for the ultimate order did not expressly find that father had committed an act of abuse.
Finally, we do not agree with father's argument that, as the act of abuse took place outside the state, the court was without subject matter jurisdiction to declare the child dependent and neglected.
Neither the UCCJA nor the Children's Code require that acts of abuse take place in Colorado in order to allow the state to protect *10 an abused child who is within the borders of the state. See Johnson v. District Court, 654 P.2d 827 (Colo.1982) (Under the UCCJA, a court may have jurisdiction to protect a child in an emergency even though the events causing the situation occurred elsewhere.).
We thus reject father's contention that the jury verdict was insufficient to permit the court to obtain jurisdiction over him and order him to comply with the provisions of the treatment plan.
The order is reversed to the extent that it modifies either mother's custody rights or father's visitation rights under the Oklahoma custody determination. The judgment and order are affirmed in all other respects.
PIERCE and MARQUEZ, JJ., concur.